1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MELVIN S.,

                    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

Case No. 20-5978

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of his

disability insurance ("DIB") and supplemental security income ("SSI") benefits.

The parties have consented to have this matter heard by the undersigned

Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule

MJR 13.

I. ISSUES FOR REVIEW

1. Whether the ALJ Properly Evaluated Medical Opinion Evidence

2. Whether the ALJ Properly Found Plaintiff's Mental Health Impairments to be

    Non-Severe

3. Whether the ALJ Properly Evaluated Plaintiff's Subjective Testimony

4. Whether the ALJ Properly Evaluated Lay Witness Testimony

5. Whether the ALJ Properly Assessed Plaintiff's Residual Functional Capacity

    (RFC)

6.  Whether Plaintiff is Entitled to Remand for an Award of Benefits

7.  Whether the Court Should Reverse and Remand This Case Due to
Constitutional Violations

## II. <u>BACKGROUND</u>

On November 25, 2014, plaintiff filed applications for DIB and SSI, alleging disability onset date of September 1, 2012. Administrative Record ("AR") 112. Plaintiff's applications were denied upon official review and upon reconsideration. *Id*. A hearing was held before Administrative Law Judge (ALJ) Joanne E. Dantonio on June 27, 2016. *Id*. On December 6, 2016, ALJ Dantonio issued a decision finding that plaintiff was not disabled. AR 112–25.

On May 22, 2018, plaintiff again filed applications for DIB and SSI, alleging disability onset date of October 11, 2015. AR 134–35. For DIB, the date last insured was June 30, 2018. Plaintiff's applications were denied upon official review and upon reconsideration. AR 134–67, 170–205.

A hearing was held before ALJ Allan G. Erickson on January 16, 2020, during which plaintiff amended his alleged disability onset date to December 7, 2016. AR 54–56. On February 4, 2020, ALJ Erickson issued a decision; the ALJ found the presumption of non-disability had been rebutted by a showing of changed circumstances. AR 15.

The ALJ determined that plaintiff's residual functional capacity (RFC) was: "to perform light work. . . . The claimant is able occasionally to climb ladders, ropes, or scaffolds and occasionally to crawl. He is able to reach overhead bilaterally on an occasional basis. He is able to tolerate occasional exposure to vibration and cold temperatures." AR 22. The ALJ found that plaintiff was not disabled. AR 30–31. On July

29, 2020, the Social Security Appeals Council denied plaintiff's request for review. AR 1–6.

Plaintiff seeks judicial review of the ALJ's February 4, 2020 decision. Dkt. 21.

## III.  STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

## IV.  DISCUSSION

In this case, the ALJ found that plaintiff had the following severe impairments: cervical degenerative disc disease, lumbar degenerative disc disease, chronic pain syndrome, and right hip degenerative joint disease with tendon tears. AR 18. Based on the limitations from these impairments, the ALJ found that plaintiff could perform light work. AR 22. Relying on vocational expert ("VE") testimony, the ALJ found at step four that plaintiff could not perform his past relevant work, but could perform other light, unskilled work at step five of the sequential evaluation; therefore, the ALJ determined that plaintiff was not disabled. AR 29–31.

1. Whether the ALJ Properly Evaluated Medical Evidence

Plaintiff assigns error to the ALJ's evaluation of medical opinions from Brent Packer, M.D. and Pamil Sidhu, M.D. Dkt. 21, pp. 4–6. The ALJ opted not to rely on these opinions, instead crediting portions of the assessments performed by Greg Saue,

1   M.D. and Norman Staley, M.D. AR 28. Both Dr. Saue and Dr. Staley reviewed plaintiff's

2   record from his reconsideration determination on October 19, 2018 and December 31,

3   2018, respectively. *Id*.

4         Plaintiff summarizes much of the rest of the medical evidence but does not allege

5   specific errors concerning the ALJ's evaluation of any opinions or impairments other

6   than those discussed herein. Dkt. 21, pp. 4–9. The Court will not consider matters that

7   are not "'specifically and distinctly'" argued in the plaintiff's opening brief. *Carmickle v.*

8   *Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1161 n. 2 (9th Cir. 2008) (quoting

9   *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003)).

10        A.  <u>Medical Opinion Standard of Review</u>

11        The Social Security Administration changed the regulations applicable to

12  evaluation of medical opinions; hierarchy among medical opinions has been eliminated,

13  but ALJs are required to explain their reasoning and specifically address how they

14  considered the supportability and consistency of each opinion. *See* 20 C.F.R. §

15  416.920c; Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed.

16  Reg. 5844-01 (Jan. 18, 2017). When plaintiff submitted new applications in 2018, the

17  amended regulations were in effect.

18        Regardless whether a claim pre- or post-dates this change to the regulations, an

19  ALJ's reasoning must be supported by substantial evidence and free from legal error.

20  *Ford v. Saul*, 950 F.3d 1141, 1153-56 (9th Cir. 2020) (citing *Tommasetti v. Astrue*, 533

21  F.3d 1035, 1038 (9th Cir. 2008)); *see also Murray v. Heckler*, 722 F.2d 499, 501–02

22  (9th Cir. 1983).

23

24

25

Under 20 C.F.R. § 416.920c(a), (b)(1)-(2), the ALJ is required to explain whether the medical opinion or finding is persuasive, based on whether it is supported and whether it is consistent.

B. Opinions of Dr. Packer and Dr. Sidhu

Dr. Packer reviewed plaintiff's medical records on June 10, 2016 and opined that records showed diagnosable impairments of spondylosis (severity rating 4/5), chronic pain syndrome (severity rating 4/5), and lumbar radiculopathy (severity rating 4/5). AR 645. Based on these physical impairments, Dr. Packer opined that plaintiff would have marked limitations due to postural restrictions and marked limitations due to gross or fine motor skill restrictions—as well as a significant/moderate limitation with respect to performing activities within a schedule, maintaining a regular attendance, and being punctual within customary tolerances. AR 644. Dr. Packer further opined that plaintiff would be unable to perform most exertional activities and would only be able to lift a maximum of ten pounds, frequently lift or carry small articles, and sit for most of the day, walking and standing for brief periods. *Id*. The highest level of work Dr. Packer found that plaintiff could perform was sedentary. AR 644.

Dr. Sidhu reviewed plaintiff's medical records on April 23, 2018 and opined that these records showed spondylitis (severity rating 5/5), degenerative disc disease (severity rating 4/5), and chronic pain syndrome (severity rating 3/5). AR 668. Based on these physical conditions, Dr. Sidhu opined that plaintiff would have marked limitations with respect to postural restrictions and marked limitations as to gross or fine motor skill restrictions; significant/moderate limitation when performing activities within a schedule, maintaining a regular attendance, and being punctual within customary tolerances;

performing routine tasks without undue supervision, and making simple work-related

decisions. AR 667. Dr. Sidhu further opined that plaintiff would be unable to perform

most exertional activities, except lifting a maximum of ten pounds and sitting for most of

the day and walking or standing for brief periods—he also determined that plaintiff's

highest level of work would be sedentary. *Id*.

In finding the medical opinions of Dr. Packer and Dr. Sidhu unpersuasive, the

ALJ reasoned that (1) they had based their assessments on plaintiff's impairment

records before his alleged disability onset date for the current period, and (2) they were

inconsistent with plaintiff's activities of daily living. AR 28.

With respect to the ALJ's first reason, medical evidence and opinion predating

the relevant period at issue are "of limited relevance." *See Carmickle*, 533 F.3d at 1165.

The ALJ misstated that Dr. Sidhu's opinion was rendered prior to the relevant period,

but the record shows that it was issued on April 23, 2018, one year and four months

after plaintiff's onset date. AR 666. While Dr. Packer's opinion was issued prior to the

relevant date, under Social Security regulations, in order to evaluate an SSI claimant's

"complete medical history" the agency is required to consider medical records for "at

least" the 12 months preceding the month a claimant files an application. 20 C.F.R. §

416.912(b)(1)(ii). The ALJ was therefore required to consider both the medical opinions

of Dr. Packer and Dr. Sidhu and erred by discounting them on this basis.

With respect to the ALJ's second reason, inconsistency with a claimant's

activities may serve as a proper basis for rejecting a medical source's opinion. *Rollins v.*

*Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Yet disability claimants should not be

penalized for attempting to lead normal lives in the face of their limitations. *See Reddick*

1   *v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citing *Cooper v. Bowen*, 815 F.2d 557, 561

2   (9th Cir. 1987) (claimant need not "vegetate in a dark room" in order to be deemed

3   eligible for benefits)).

4          Here, the ALJ found the medical opinions of Dr. Packer and Dr. Sidhu

5   inconsistent with plaintiff's ability to work at Lowes, lift heavy items, climb up and down

6   a ladder, work on a car, and work on home remodeling. AR 28. However, these

7   activities do not necessarily contradict the medical opinions of either doctor. The ALJ

8   stated that these activities "soundly discredit" the sedentary level of work that both

9   doctors assigned but does not provide in detail what these activities entail except for "a

10  lot of bending over while working on car." *See* AR 26–28. The record does not show,

11  nor did the ALJ inquire of plaintiff during the hearing, how often plaintiff engaged in

12  these activities or the duration of each activity. The ALJ did not provide in detail how

13  plaintiff's activities were inconsistent with the medical opinions of Dr. Packer and Dr.

14  Sidhu and erred in doing so.

15          C.   Opinions of Dr. Saue and Dr. Staley

16          Both Dr. Saue and Dr. Staley found that plaintiff could perform light work but that

17  plaintiff also had additional limitations: change positions to avoid exacerbating his hip

18  pain from sitting, never climb ladders, ropes, or scaffolds, and limit postural positions

19  occasionally. AR 143–81. The ALJ credited Dr. Saue's and Dr. Staley's evaluation that

20  plaintiff could perform light work, but found their additional limitations "unpersuasive"

21  because they were inconsistent with plaintiff's reported and demonstrated functioning.

22  AR 29. Specifically, the ALJ reasoned that the record did not show plaintiff using a cane

23

24

25

or an assistive device and that plaintiff had worked for Lowes in June 2018 where he was required to travel up and down a ladder repeatedly. *Id*.

With respect to the ALJ's decision to discredit the additional limitations because the record does not show plaintiff using a cane, as discussed above, "inconsistency with a claimant's activities may serve as a proper basis for rejecting a medical source's opinion." *Rollins*, 261 F.3d at 856. But the ALJ does not explain why not a using a cane contradicts the opinion that plaintiff need to change positions, refrain from climbing ladders, ropes, or scaffolds, and limit his postural positions. As to the ALJ's decision to discredit the additional illimitations because plaintiff had worked at Lowes in June 2018, "[a]n ALJ may consider any work activity, including part-time work, in determining whether a claimant is disabled[.]" *Ford*, 950 F.3d at 1156 (citing *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992)).

In *Ford*, the ALJ found that claimant's part-time work at Federal Express showed that the claimant could in fact "sustain a work schedule, tolerate work-related stress, and perform simple tasks." 950 F.3d at 1156. Here, the ALJ only cited to plaintiff's appointment with a therapist where he reported working all night at Lowes, which required repeated lifting and climbing up and down a ladder. AR 29 (citing AR 496). The ALJ did not specifically state that he discounted the additional limitations due to plaintiff's report that he was climbing up and down a ladder at Lowes, but the Court may reasonably infer that this was part of his reasoning. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

However, the ALJ failed to make any specific findings regarding whether this activity was subject to a schedule or how the circumstances of the work activity

demonstrated plaintiff's capacities were sufficient to tolerate work-related stress and perform simple tasks. In addition, the ALJ did not provide any specific explanation of how the opinions of Dr. Saue and Dr. Staley of plaintiff needing to change position to avoid exacerbating his hip pain and limiting postural positions occasionally were inconsistent with this activity. For these reasons, the ALJ committed error in evaluating part of Dr. Saue and Dr. Staley's medical opinions.

2. <u>Whether the ALJ Properly Found Plaintiff's Mental Health Impairments to be Non-Severe</u>

Plaintiff assigns error to the ALJ's findings at step two of the sequential evaluation, asserting that his post-traumatic stress disorder ("PTSD") and personality disorders merited inclusion as severe, medically determinable impairments. Dkt. 21, p. 6.

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520, § 416.920. If the claimant is found to be disabled or not disabled at any particular step thereof, the disability determination is made at that step and the sequential evaluation process ends. *See id.* To be found disabled, a claimant must have a "physical or mental impairment" that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508, § 416.908. It "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." *Id*.

At step two of the sequential disability evaluation process, "the medical severity" of a claimant's impairments is considered. 20 C.F.R. 404.1520(a)(4)(ii), § 416.920(a)(4)(ii). If the claimant has no "severe medically determinable" impairment, then he or she will be found not disabled. *Id.* An impairment is "not severe" if it does not "significantly limit [the claimant's] mental or physical abilities to do basic work activities." 20 C.F.R. § 404.1521(a), § 416.920(a); *see also* Social Security Ruling ("SSR") 96-3p, 1996 WL 374181, at *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b), § 416.921(b); SSR 85-28, 1985 WL 56856, at *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL 56856, at *3; *see also Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work activities." *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001); *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry, however, is a *de minimis* screening device used to dispose of groundless claims. *See Smolen*, 80 F.3d at 1290.

Here, the ALJ found that insufficient evidence supported the inclusion of PTSD and personality disorders as severe, medically determinable impairments. AR 20. The ALJ reached this determination by giving low weight to the opinion of psychiatric consultative examiner Amy Ford, Psy.D. *Id.*

Dr. Ford evaluated plaintiff on September 18, 2019 and diagnosed him with PTSD; major depressive disorder; personality disorder; homelessness (next month);

relationship distress with spouse or intimate partner; and rule-out bipolar disorder. AR 543. Dr. Ford assessed that Plaintiff's ability to understand was below average; his ability to concentrate was poor; his persistence was fair; his ability to interact socially was reserved and guarded; and that he could not adapt to new environmental conditions. *Id.*

The ALJ found that there was insufficient evidence to support Dr. Ford's diagnoses as medically determinable impairments because (1) it was inconsistent with the findings of other providers and (2) because plaintiff had discontinued his previously prescribed medication with no explanation. AR 20.

With respect to the ALJ's first reason, a conflict between treatment notes elsewhere in the record and an examining medical source's opinion may constitute a legitimate reason to discount the opinions of the source. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692–93 (9th Cir. 2009) (holding that a conflict with treatment notes is a specific and legitimate reason to reject treating physician's opinion). But, cursory treatment notes that describe a claimant's demeanor are of limited utility in making this determination.

The records that the ALJ cited in support of this finding were from providers who were evaluating plaintiff for conditions unrelated to his mental health. *See* AR 20–21 (citing AR 423, 466, 523, 542, 571, 582, 611, 657, 680, 683, 687, 697, 701, 705 1251, 1280–89, 1290–1303). The ALJ also noted that plaintiff was cooperative in his visits and found to have normal attention and concentration. AR 21. But a claimant's ability to be cooperative and appear attentive to his healthcare providers who were not examining him for his mental health does not contradict a provider's opinion that the claimant has

1  below average ability to understand, poor ability to sustain concentration, and ability to

2  adapt to new environmental conditions. The Social Security Administration's regulation

3  concerning evidence of functioning in supportive situations is instructive here: "Your

4  ability to complete tasks in settings that are highly structured, or that are less

5  demanding or more supportive than typical work settings does not necessarily

6  demonstrate your ability to complete tasks in the context of regular employment during

7  a normal workday or work week." 20 C.F.R. § 404, Subpart P, App'x 1, § 12.00(C)(6)(b)

8  (2016). Plaintiff's interactions with treatment providers are not the equivalent of

9  interactions with coworkers, supervisors, or the general public in a work setting.

10 Therefore, the ALJ's reason for rejecting Dr. Ford's opinion on this basis is

11 unpersuasive.

12      With respect to the ALJ's second reason, a claimant's "failure to follow the

13 prescribed treatment without a good reason" may support the conclusion that the

14 claimant is not disabled. 20 C.F.R. § 404.1530(b); *see also* SSR 96–7 1996 SSR LEXIS

15 4, at *21–*22 ("the individual's statements may be less credible if the level or frequency

16 of treatment is inconsistent with the level of complaints .... and there are no good

17 reasons for this failure"); *but see Nichols v. Califano*, 556 F.2d 931, 932 (9th Cir. 1977)

18 (even if a condition could be remedied by surgery, if the claimant's "actions were

19 reasonable under the circumstances, then the district court's judgment upholding the

20 [written decision by the ALJ] must be reversed"). However, a good reason can provide a

21 valid excuse for not following prescribed treatment. 20 C.F.R. § 404.1530(c); SSR 96–7

22 1996 SSR LEXIS 4, at *21–*22; *Nichols*, supra, 556 F.2d at 933.

23

24

25

Here, the ALJ cited plaintiff's "lack of interest in pursuing recommended treatment, without explanation" as support for the ALJ's rejection of Dr. Ford's opinion. AR 20. Specifically, the ALJ pointed to plaintiff's refusal to complete a PHQ-9, counseling, and medication in 2017. AR 679, 686.

However, "[w]hen a mental illness is involved, assuming that a failure to comply with prescribed treatment suggests a willful failure to comply with prescribed treatment can be illogical. This is in part because a person suffering from a mental illness may not realize that he needs his medication, or he may not even realize that his "condition reflects a potentially serious mental illness." *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 2001). This Court has noted that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" *Id.* (quoting with approval, *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)).

Here, the very same records cited by the ALJ show that when asked if plaintiff felt down, depressed, or hopeless or felt little interest or pleasure in doing things, plaintiff answered in the affirmative or simply declined to answer. AR 679–86. The record also shows that in November 2018, plaintiff was unable to remember why he stopped taking medication. AR 360. In rejecting Dr. Ford's opinion based on plaintiff's refusal to resume his medication, the ALJ has not provided a "clear and convincing reason." *Lester*, 81 F.3d at 834. The ALJ's analysis of Dr. Ford's opinion, and with it, the finding that Plaintiff did not have a severe mental health impairment, was unsupported by substantial evidence.

While the ALJ erred, the Court must determine whether the error was harmless. In *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017)*,* the Ninth Circuit concluded that because the ALJ decided step two in the claimant's favor and was required to consider all impairments in the RFC, whether "severe" or not, "[a]ny alleged error is therefore harmless and cannot be the basis for a remand." *Id.* (citing *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)). The same is true here. Because the ALJ decided step two in plaintiff's favor, the ALJ was required to consider evidence of any and all impairments, severe or not, in assessing plaintiff's RFC.

Some courts have distinguished *Buck* on the basis that the ALJ's RFC analysis showed that the ALJ did not consider certain impairments in the RFC after finding them non-severe at step two. *See Mercado v. Berryhill*, No. 16-CV-04200-BLF, 2017 WL 4029222, at *6 (N.D. Cal. Sept. 13, 2017); *Winkle v. Berryhill*, No. C17-1633 TSZ, 2018 WL 5669018, at *2 (W.D. Wash. Nov. 1, 2018). Here, the ALJ's decision shows he did not consider Plaintiff's alleged mental health impairments in the RFC assessment. AR 22–29. Accordingly, the error was not harmless and requires reversal.

3. <u>Whether the ALJ Failed to Properly Evaluate Plaintiff's Testimony</u>

Next, Plaintiff assigns error to the ALJ's evaluation of his subjective symptom testimony. Dkt. 21, p. 9.

To reject a claimant's subjective complaints, the ALJ's decision must provide "specific, cogent reasons for the disbelief." *Lester*, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting

1  the claimant's testimony must be "clear and convincing." *Lester*, 81 F.3d at 834.

2  "[B]ecause subjective descriptions may indicate more severe limitations or restrictions

3  than can be shown by medical evidence alone," the ALJ may not discredit a subjective

4  description "solely because it is not substantiated affirmatively by objective medical

5  evidence." *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

6      In this case, plaintiff testified to neck pain months after undergoing surgery on

7  February 6, 2018. AR 65. Plaintiff also testified to ongoing right hip and lower back

8  issues that prevent him from sitting or standing for two hours or longer at a time. AR 65,

9  71, 78. In addition, he stated that the pain in his right hip requires him to sit on his right

10  buttock and made walking more painful. AR 67, 69, 79.

11      The ALJ found plaintiff's testimony not entirely reliable due to its inconsistency

12  with (1) the objective medical evidence and (2) plaintiff's activities of daily living. AR 23

13  –29.

14      An inconsistency with the objective evidence may serve as a clear and

15  convincing reason for discounting a claimant's testimony. *Regennitter v. Comm'r of*

16  *Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). Here, the ALJ cited to an

17  examination of plaintiff's hip by orthopedist Joshua Johnston, M.D. in August 2018. AR

18  25 (citing AR 602-07). Dr. Johnson assessed that plaintiff had mild arthritis in his right

19  hip and that "patient's subjective complaints of pain really did not match is [sic] objective

20  evidence of orthopedic disease." AR 602.

21      The ALJ also cited to notes of physical therapist Marianne Moser, whose

22  assessment in December 2018 showed plaintiff had "moderate weakness in his hips."

23  AR 26 (citing AR 1117–18). In addition, ALJ supported his finding with a December

24

25

2019 assessment of plaintiff's low back and hip pain by orthopedist Zhiqing Xing, M.D. AR 26–27 (citing AR 1248, 1252, 1252–53, 1303). Dr. Xing found that plaintiff's x-ray showed "only mild degenerative changes in right hip joint" and that his hip pain "could be secondary to his chronic lumbar spine problems." AR 1252.

As to plaintiff's neck pain, the ALJ cited two specific appointments following plaintiff's surgery where he reported that his neck was "doing well" and described the pain as a "dull ache." AR 512, 1171. But, the records show that from March 2019 and onward, plaintiff was being seen by medical providers for renewed neck pain. AR 1138, 1146, 1150, 1171. Furthermore, during the hearing, the ALJ commented that the records show "in the immediate aftermath of the surgery, [plaintiff] was feeling better" but "about nine months from the surgery, [plaintiff] was having renewed neck pain again." AR 65. Although the ALJ made specific findings in discrediting plaintiff's testimony about his neck pain, plaintiff's medical records show—and the ALJ himself described—that the post-surgery improvements of plaintiff's neck were temporary. The ALJ's reasons for discounting plaintiff's testimony about his neck pain were not supported by substantial evidence. *See, Lester*, 81 F.3d at 834.

The ALJ also reasoned that he discredited plaintiff's testimony due to the inconsistency between his statements during the hearing regarding the use of a cane and the medical records that show plaintiff presenting without a cane or other assistive devices on multiple occasions. *See* AR 27 (citing AR 466, 526, 530, 534, 585, 588, 594, 606, 1084, 1087, 1090, 1252). While the records support a finding that plaintiff did not use a cane or assistive device as frequently as he claimed, the ALJ did not explicitly explain how plaintiff's use of a cane or lack thereof affected his evaluation of plaintiff's

1    testimony about his limitations. The ALJ did not provide a "clear and convincing" reason

2    for the ALJ to discredit plaintiff's testimony on this basis. *Lester*, 81 F.3d at 834.

3        With respect to the ALJ's second reason, an ALJ may discount a claimant's

4    testimony based on daily activities that either contradict her testimony or that meet the

5    threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

6    "Only if the level of activity were inconsistent with Claimant's claimed limitations would

7    these activities have any bearing on Claimant's credibility." *Reddick*, 157 F.3d at 722.

8        The ALJ listed the following activities: household work, home renovation, working

9    on cars, motorcycle rides, and working at Lowes in June 2018. AR 27–28. The ALJ did

10   not explain how the listed activities would be transferable to a work setting. In addition,

11   the ALJ cited the activities without describing with sufficient specificity to show they

12   would contradict plaintiff's testimony. "The Social Security Act does not require that

13   claimants be utterly incapacitated to be eligible for benefits, ... and many home activities

14   may not be easily transferable to a work environment where it might be impossible to

15   rest periodically or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

16        Except for plaintiff working at Lowes "all night" (AR 496), the record does not

17   indicate how often and how long plaintiff engaged in these activities and the ALJ did not

18   inquire plaintiff about them at the hearing. In fact, the record shows that after partaking

19   in these activities, plaintiff reported higher levels of pain. *See* AR 468, 496, 508, 516,

20   1116, 1130, 1150. These activities do not provide a "clear and convincing" reason to

21   discount plaintiff's testimony. *Lester*, 81 F.2d at 834

22        4.  <u>Whether the ALJ Properly Evaluated Lay Evidence</u>

23        Plaintiff argues that the ALJ erred in evaluating testimony of social worker

24

25

1    Marilyn Meldrich. Dkt. 21, p. 13–14. Lay testimony regarding a claimant's symptoms "is

2    competent evidence that an ALJ must take into account," unless the ALJ "expressly

3    determines to disregard such testimony and gives reasons germane to each witness for

4    doing so." *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony,

5    the ALJ need not cite the specific record as long as "arguably germane reasons" for

6    dismissing the testimony are noted, even though the ALJ does "not clearly link his

7    determination to those reasons," and substantial evidence supports the ALJ's decision.

8    *Id.* at 512. The ALJ also may "draw inferences logically flowing from the evidence."

9    *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

10         On May 22, 2018, Ms. Meldrich observed that plaintiff had issues with breathing,

11   difficulty concentrating and answering questions, trouble sitting and leaned to one side,

12   and had to stand several times during the interview. AR 323. On November 6, 2018,

13   Ms. Meldrich made similar observations and noted that plaintiff appeared depressed

14   and could not remember why he was not taking all of his medication. AR 358–60.

15         Plaintiff does not show how the alleged error affected the outcome of the ALJ's

16   analysis. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)) (internal citation

17   omitted) (""[T]he burden of showing that an error is harmful normally falls upon the party

18   attacking the agency's determination.'"). Dkt. 21, p. 14.

19         D.  <u>Harmless Error</u>

20         Harmless error principles apply in the Social Security context. *Molina*, 674 F.3d

21   at 1115. An error is harmless only if it is not prejudicial to the claimant or

22   "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r*

23   *Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115.

24

25

1    The determination as to whether an error is harmless requires a "case-specific

2    application of judgment" by the reviewing court, based on an examination of the record

3    made "'without regard to errors' that do not affect the parties' 'substantial rights.'"

4    *Molina*, 674 F.3d at 1118-19 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

5            The ALJ determined plaintiff's RFC would be: "to perform light work. . . . The

6    claimant is able occasionally to climb ladders, ropes, or scaffolds and occasionally to

7    crawl. He is able to reach overhead bilaterally on an occasional basis. He is able to

8    tolerate occasional exposure to vibration and cold temperatures." AR 22.  The ALJ's

9    discounting of the medical opinions of Dr. Packer and Dr. Sidhu, and the rejection of Dr.

10   Ford's opinion, were not harmless because if the ALJ had properly evaluated the

11   medical evidence, the ALJ may have incorporated additional limitations in determining

12   plaintiff's RFC and potentially would have found plaintiff to be disabled.

13           And, the ALJ's failure to provide an explanation for discounting the additional

14   limitations imposed by Dr. Saue and Dr. Staley, and errors in discounting plaintiff's

15   subjective testimony, were not harmless because if the ALJ had properly evaluated this

16   evidence, this would potentially change the ALJ's assessment of plaintiff's RFC and

17   would potentially lead to a determination that plaintiff was disabled during the relevant

18   period.

19       5.   Whether ALJ Properly Assessed Plaintiff's RFC with Substantial Evidence

20           Plaintiff argues the RFC and Step Five findings are not supported by substantial

21   evidence. Dkt. 20, pp. 17–18.

22           The ALJ committed harmful error, necessitating the ALJ's reassessment of the

23   medical opinions of Dr. Packer, Dr. Sidhu, Dr. Saue, Dr. Staley, and Dr. Ford on

24

25

1  remand, as well as reassessment of plaintiff's subjective testimony. *See* Sections

2  IV.1A–2, *supra*. Therefore, the ALJ must reassess the RFC on remand. *See* Social

3  Security Ruling 96-8p, 1996 WL 374184 (1996) (an RFC "must always consider and

4  address medical source opinions"); *Valentine*, 574 F.3d at 690 ("an RFC that fails to

5  take into account a claimant's limitations is defective").

6       Because the ALJ must reassess plaintiff's RFC, the ALJ is directed to re-evaluate

7  Step Five to determine whether there are jobs existing in significant numbers in the

8  national economy plaintiff can perform given the RFC.

9

10      6.  Remand With Instructions for Further Proceedings

11       "'The decision whether to remand a case for additional evidence, or simply to

12  award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664,

13  682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If

14  an ALJ makes an error and the record is uncertain and ambiguous, the court should

15  remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045

16  (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy

17  the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d

18  at 668.

19       Here, the proper remedy is a remand for further proceedings. As discussed

20  above, the ALJ harmfully erred in evaluating medical opinion evidence from Dr. Packer,

21  Dr. Sidhu, Dr. Saue, and Dr. Staley. The ALJ also harmfully erred in rejecting Dr. Ford's

22  opinion in determining whether plaintiff's mental illness was non-severe. Finally, the ALJ

23  harmfully erred in discounting plaintiff's limitations and plaintiff's subjective testimony.

24

25

On remand, the ALJ is directed to re-evaluate the opinions of Dr. Packer, Dr. Sidhu, Dr. Saue, Dr. Staley, and Dr. Ford and allow plaintiff to provide additional testimony and evidence, as necessary to clarify the record.

7. <u>Whether the Court Should Reverse and Remand This Case due to Constitutional Violations</u>

Plaintiff argues that the statutory restriction on the President's removing the Social Security Administration Commissioner was unconstitutional under *Collins v. Yellen*, and *Seila Law LLC v. SFPB*, as interpreted by the Office of Legal Counsel. *Constitutionality of the Commissioner of Social Security's Tenure Protection,* 45 Op. O.L.C. __ (July 8, 2021) https://www.justice.gov/olc/file/1410736/download. Plaintiff relies on *Collins v. Yellen,* 141 S. Ct. 1761 (2021), *Seila Law LLC v. Consumer Fin. Prot. Bureau,* 140 S. Ct. 2183 (2020), and *Lucia v. SEC,* 138 S. Ct. 2044 (2018) and contends the Court is required to remand the case for a de novo agency hearing, because the ALJ was not acting pursuant to properly delegated authority, therefore the ALJ did not have legal authority to review this case and make a decision. Dkt. 21 at 16–18.

If a separation of powers violation occurred as a result of the 42 U.S.C. § 902(a)(3) statutory language, then plaintiff has a right, shared by everyone in this country, to bring a challenge the under separation of powers doctrine only if she has Article III standing to invoke the Court's jurisdiction under *Collins v. Yellen,* 141 S. Ct. 1761 (2021), and *Siela Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020). To have standing, plaintiff must show he is an aggrieved party—he must establish there is a nexus between the Constitutional violation and an unlawful action of

the ALJ in his specific case, and that he has a compensable injury to be redressed. *Collins,* 141 S. Ct. at 1787, 1788, n.23, and n.24; *see also, TransUnion LLC v. Ramirez,* 141 S.Ct. 2190, 2205-2206 (2021) (even if plaintiff can show a violation of federal law, in order to invoke the federal court's jurisdiction and Article III standing, plaintiff must show they have suffered concrete "physical, monetary, or cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in American courts"); *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 37-38 (1976) (clarifying that Article III standing is focused on the plaintiff, and whether, assuming the justiciability of the claim, plaintiff has alleged a personal stake in the outcome to justify the federal court's exercise of jurisdiction; the standing inquiry is not focused on the issues plaintiff seeks to adjudicate).

Plaintiff argues that all actions taken by former Commissioner Saul – including all actions taken by ALJs who served during her tenure – would be void because of the allegedly unconstitutional removal provision. The Court in *Collins* rejected this argument. *Collins,* at 1779.

In *Collins*, the plaintiffs showed they had property rights that were injured, and the injury was traceable to the FHFA's actions (actions pursuant to a decision made during the Director's tenure and implemented for many years thereafter), and a decision in plaintiff's favor could lead to an award of relief sought by plaintiff; by contrast, in this case, plaintiff cannot meet any of the three-part criteria to establish Article III standing. Under the Court's holding*,* in order to establish Article III standing, plaintiff is required to show that she suffered compensable harm as a result of the Constitutional separation of powers violation. *Collins v. Yellen,* 141 S. Ct. at 1787, 1788 n.23, and n.24; *see Decker*

1  *Coal Company v. Pehringer,* 8 F.4th 1123, 1136-1138 (9th Cir. 2021) (plaintiff brought a

2  separation of powers challenge to the Department of Labor ALJ's authority under

3  *Collins v. Yellen* and *Seila Law* – but failed to show any indication that the ALJ took

4  unlawful action, nor did plaintiff make any showing of a nexus between the allegedly

5  unconstitutional removal provisions and plaintiff's specific case, nor any compensable

6  harm; the Court declined to remand for a new hearing).

7        Here, plaintiff has not made any showing of how this alleged constitutional

8  violation caused any compensable harm in his specific situation. *Collins,* at 1779

9  ("plaintiff must show that it has suffered an 'injury in fact' that is 'fairly traceable' to the

10 defendant's conduct and would likely be 'redressed by a favorable decision.'" (quoting

11 *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-561 (1992)). Plaintiff is not required to

12 show that the ALJ would have decided his appeal differently and awarded benefits—but

13 for the statutory issue identified as a potential separation of powers violation by the

14 Office of Legal Counsel. *Constitutionality of the Commissioner of Social Security's*

15 *Tenure Protection,* 45 Op. O.L.C. __ (July 8, 2021)

16 https://www.justice.gov/olc/file/1410736/download. *Seila Law LLC v. Consumer Fin.*

17 *Prot. Bureau*, 140 S. Ct. 2183, 2196 (2020) (in order to show traceability, the litigant is

18 not required to show the U.S. Government's conduct would have been different if the

19 Government had acted with proper authority under the Constitution).

20        Yet, plaintiff must show compensable harm. *See Decker Coal Company v.*

21 *Pehringer,* 8 F.4th 1123, 1137 (9th Cir. 2021) ("Here, the ALJ lawfully exercised power

22 that he possessed by virtue of his appointment, which the Secretary ratified before the

23

24

25

ALJ adjudicated the claim. Absent a showing of harm, we refuse to unwind the decisions below.")

Because plaintiff has not shown any compensable harm fairly traceable to the actions of former Commissioner Saul, under *Collins v. Yellen,* 141 S. Ct. 1761,1788 (2021), the plaintiff's situation is distinguishable from the plaintiff's claims in *Collins*; plaintiff has failed to establish standing and the Court need not address the plaintiff's or defendant's additional arguments.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court finds the ALJ erred when he determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is REVERSED and this matter is REMANDED for further administrative proceedings.

Dated this 22nd day of December, 2021.


*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge